UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HENRY JENKINSON,

       Plaintiff,

       -against-

JEAN BAPTISTE-BRUNO, et al.,

       Defendants.

16 Civ. 4519 (AJP)

**OPINION & ORDER**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

       This case involves an accident causing serious injuries, with four related cases filed in Supreme Court, Kings County. Jenkinson's counsel candidly admitted that he chose to file in federal court in hopes of getting first crack at defendants' insurance policy, which likely is insufficient to cover all five cases. Presently before the Court is defendants Jean Baptiste-Bruno and Rosa Bruno's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and the Colorado River abstention doctrine. (Dkt. No. 31.) The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 21.) For the reasons set forth below, defendants' motion is GRANTED.

## FACTS

       On June 4, 2016, plaintiff Henry Jenkinson attended a party hosted by defendant Jake Oleson at 670 Bushwick Avenue in Brooklyn–a building owned by defendants Jean Baptiste-Bruno and Rosa Bruno (hereinafter collectively "Bruno" or "the Brunos"). (Dkt. No. 1: Compl. ¶¶ 5, 9, 18.) Jenkinson, Annie Caminiti, Silvie Saltzman, Savannah Brogan and William Politan were

injured that evening when the building's balcony, on which they were standing, collapsed.  (Compl. ¶ 19; Dkt. No. 33: Nicolini Aff. ¶¶ 3-8; Dkt. No. 43, Att. B: Politan Compl. ¶¶ 26-27.)

Caminiti, Saltzman, Jenkinson, Brogan and Politan sued the Brunos on June 9, 2016, June 14, 2016, June 15, 2016, August 23, 2016 and September 20, 2016, respectively, for the allegedly negligent maintenance of the balcony.  (See generally Compl.; Nicolini Aff. ¶¶ 5-8 & Exs. A-B, F; Politan Compl.)  Jenkinson's federal complaint also sued Jake Oleson, and Caminiti and Saltzman amended their state court complaints to add Jake Oleson and fellow lessees Karen Oleson and Paul Hairston.  (Nicolini Aff. ¶¶ 5-7; Nicolini Aff. Ex. A: 8/17/16 Caminiti Am. Compl.; Ex. B: 7/26/16 Saltzman Am. Compl.; Ex. I: 9/23/16 Conf. Tr. at 2.)  Caminiti furthermore sued "670 Bushwick Avenue Rental," presumably the corporation used by the Brunos for their rental property.  (Nicolini Aff. Ex. A: 8/17/16 Caminiti Am. Compl.)

The Caminiti, Saltzman and Brogan actions were filed in Supreme Court, Kings County, and were consolidated on October 28, 2016 for discovery and trial before Justice Rivera.  (Nicolini Aff. ¶ 9 & Ex. H: 10/28/16 Order.)  The Politan complaint also was filed in Supreme Court, Kings County, although it appears to have only recently been served on the Brunos.  (Dkt. No. 43, Att. B: 12/15/16 Nicolini Letter at 2.)  In a letter to opposing counsel, the Brunos' counsel stated that he would seek to have the Politan action consolidated with the three other state court actions.  (Id.)

Jenkinson is the only plaintiff who filed in federal court (asserting diversity).  The Brunos are represented by the same counsel in all five cases.  (Nicolini Aff. Ex. A: 8/25/16 Answer; Ex. B: 7/27/16 Answer; Ex. D: 6/30/16 Answer; Ex. F: 9/14/16 Answer; 12/15/16 Nicolini Letter.)  Oleson is represented by the same counsel in the three cases where he is a defendant.  (See Dkt. No. 41: 11/30/16 Conf. Tr. at 17.)

3

At this Court's Initial Pretrial Conference on September 23, 2016, the Court set a discovery cutoff date of January 31, 2017.  (Dkt. No. 25: IPTC Scheduling Order; see Dkt. No. 26: 9/23/16 Conf. Tr.)  On November 28, 2016, after discussing with Justice Rivera the benefit of coordinating discovery in all of the cases, the Court vacated its scheduling order and directed counsel to coordinate discovery with the three consolidated cases before Justice Rivera in Kings County Supreme Court.  (Dkt. No. 36: 11/28/16 Order.)  On December 19, 2016, Jenkinson's counsel informed the Court that, given Politan's recent complaint, "it will be necessary to wait until Justice Rivera issues a new Order joining the four state actions for joint trial and hopefully directing that discovery be coordinated in those four cases." (Dkt. No. 43: 12/19/16 Jenkinson Letter to Court at 2.)

## ANALYSIS

### I. STANDARDS GOVERNING MOTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND THE COLORADO RIVER ABSTENTION DOCTRINE

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also, e.g., Faucette v. Colvin, 15 Civ. 8495, 2016 WL 866350 at *2 (S.D.N.Y. Mar. 3, 2016) (Peck, M.J.).  Courts in this Circuit consider a "motion to dismiss based on the abstention doctrine . . . as a motion made pursuant to Rule 12(b)(1)."  Kingsley v. N.Y. City Hous. Auth., 16 Civ. 169, 2016 WL 5939359 at *2 n.2 (S.D.N.Y. Oct. 6, 2016); 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, Fed. Prac. & Proc. Civ. § 1350 (3d ed. 2016) ("Courts have recognized a variety of other defenses that one normally would not think of as raising subject-matter jurisdiction questions when considering a Rule 12(b)(1) motion, such as claims that . . . the subject matter is one over which the federal court should abstain

from exercising jurisdiction."). In considering a Rule 12(b)(1) motion, a court "may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d at 113.

The Colorado River doctrine governs whether a federal court should abstain from exercising jurisdiction due to a parallel state proceeding. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-19, 96 S. Ct. 1236, 1246-47 (1976); see also, e.g., Garfield v. Ocwen Loan Servicing, LLC, 811 F.3d 86, 93 (2d Cir. 2016) (Colorado River "created a limited abstention doctrine in the context of ongoing, parallel state proceedings"). The doctrine is a narrow one given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. at 817, 96 S. Ct. at 1246. Thus, "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Colorado River Water Conservation Dist. v. United States, 424 U.S. at 817, 96 S. Ct. at 1246.[1/] The task "is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26, 103 S. Ct. 927, 942 (1983) (emphasis in original).

The Colorado River analysis begins with a determination of whether the concurrent state and federal proceedings are parallel in nature. See, e.g., Dittmer v. Cty. of Suffolk, 146 F.3d

---

[1/]   See also, e.g., Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013) ("Jurisdiction existing, this Court has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.' Parallel state-court proceedings do not detract from that obligation." (citations to Colorado River omitted)); Aventura Techs. Inc. v. World of Residensea II Ltd., 646 F. App'x 92, 94 (2d Cir. 2016).

5

113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under Colorado River."). "'Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum.'" Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012); accord, e.g., Smulley v. Mut. of Omaha Bank, 634 F. App'x 335, 337 (2d Cir. 2016); Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997) ("Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.").

> If the suits are parallel, the federal court considers six factors:
>
> "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights."

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d at 100-01 (quoting Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 522 (2d Cir. 2001)); accord, e.g., Aventura Techs. Inc. v. World of Residensea II Ltd., 646 F. App'x at 94. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal." Colorado River Water Conservation Dist. v. United States, 424 U.S. at 818-19, 96 S. Ct. at 1247 (citation omitted); see also, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 16, 103 S. Ct. at 937 ("[T]he decision whether to dismiss a federal action because of parallel state-court litigation does

not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."). A facially neutral factor therefore "is a basis for retaining jurisdiction, not for yielding it," Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d at 522, reflecting the "heavy presumption favoring the exercise of jurisdiction." Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 327 (2d Cir. 1986); accord, e.g., Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d at 100.

## II.     THE COLORADO RIVER FACTORS FAVOR DISMISSAL

### A.     The Actions Are Parallel

Here, "'substantially the same parties are contemporaneously litigating substantially the same issue in another forum.'" Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012). Jenkinson, Caminiti, Saltzman, Brogan and Politan all sued the Brunos and, with the exception of Brogan and Politan, Oleson as well. (See page 2 above.) The only other variant among the pleadings is that Caminiti and Saltzman also sued co-tenants Karen Oleson and Paul Hairston, and Caminiti added "670 Bushwick Avenue Rental." (See id.) The Brunos are represented by the same counsel in all five actions, and Oleson is represented by the same attorney in all the cases where he is a defendant. (See id.) Each action seeks damages for the Brunos' alleged negligence that caused the balcony collapse and the plaintiffs' injuries. (See id.) Jenkinson's argument that "[t]he adjudication of the State plaintiffs' damages will not resolve or determine the nature and extent of our plaintiff's damages" and vice versa (Dkt. No. 37: Jenkinson Br. at 10), ignores the fact that the primary issue of the Brunos' liability is common to all plaintiffs. The cases accordingly are parallel because they involve the same accident and substantially the same defendants, and seek the same monetary relief under the same negligence theory. See, e.g., GBA

Contracting Corp. v. Fid. & Deposit Co. of Maryland, 00 Civ. 1333, 2001 WL 11060 at *1 (S.D.N.Y. Jan. 4, 2001) ("Complete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation.").[2/]

### B. The Colorado River Factors

#### 1. Assumption of Jurisdiction Over Res

As Bruno concedes, "[t]hese actions are for personal injuries and do not involve jurisdiction over property, and therefore there is no res involved." (Dkt. No. 33: Nicolini Aff. ¶ 15.) The Court disagrees, however, with defendants' characterization of this factor as "moot." (Id.) To the contrary, "the absence of a res 'point[s] toward exercise of federal jurisdiction.'" Vill. of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999); see generally, e.g., Woodford v. Cmty.

---

[2/] Jenkinson's citation to Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997), is not persuasive. (Jenkinson Br. at 9.) Ryan noted that "[t]here is some question whether, in the absence of identical plaintiffs, two cases can be deemed parallel for Colorado River purposes." Ryan v. Johnson, 115 F.3d at 196 n.1 (citing Alliance of American Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir.1988) ("Similarity of parties is not the same as identity of parties.")). In this Circuit, parallelism can be achieved absent strict identity among the parties to the federal and state actions. The parties, rather, need only be "substantially the same" Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d at 100 (emphasis added), and courts in this Circuit have not interpreted this requirement as narrowly as Jenkinson contends. See, e.g., Bromfield v. Lend-Mor Mortg. Bankers Corp., No. 15-CV-1103, 2016 WL 632443 at *4 (D. Conn. Feb. 17, 2016) ("Thus, the Court finds that the cases are parallel because the main issue in the pending litigation in state court . . . is also the main issue in this federal action."); Pabco Constr. Corp. v. Allegheny Millwork PBT, 12 Civ. 7713, 2013 WL 1499402 at *2 (S.D.N.Y. Apr. 10, 2013) ("While the parties in the two actions are not strictly identical . . . this does not destroy the parallelism of the two actions, because 'complete identity of parties is not required,' in situations where, as here, 'the main issue in the case is the subject of already pending litigation.'" (citation omitted)); Mouchantaf v. Int'l Modeling & Talent Ass'n, 368 F. Supp. 2d 303, 306 (S.D.N.Y. 2005) ("While the Arizona action involves additional defendants not parties here, that fact does not render the proceedings non-parallel.").

8

Action Agency of Greene Cty., Inc., 239 F.3d 517, 522 (2d Cir. 2001) ("[T]he facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it.").

### 2.     Inconvenience of the Federal Forum

The federal forum and the state forum across the Brooklyn Bridge are equally convenient, which counsels against abstention. See, e.g., Vill. of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999) ("We have held that where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court.").

### 3.     Avoidance of Piecemeal Litigation

Abstention cannot "be based simply on an aversion to deciding an issue prior to a state court's adjudication." Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 525 (2d Cir. 2001). Rather, as stated by the Second Circuit:

> [T]he primary context in which we have affirmed Colorado River abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties.

Id. at 524 (citing De Cisneros v. Younger, 871 F.2d 305 (2d Cir. 1989), as an example).

This case is similar to De Cisneros v. Younger. In De Cisneros, a fire broke out in Cisneros' apartment, caused by the negligence of her contractor, Younger; the fire damaged Cisneros' apartment and other neighboring units. 871 F.2d at 306. "A number of state court lawsuits followed," the first of which was a negligence action filed on behalf of a neighboring tenant against Cisneros and Younger. Id. Cisneros also brought a negligence action in federal court against Younger and his employer, Overall Construction, based on diversity jurisdiction. Id. "Although the precise legal theories var[ied], each of the state actions–like their federal counterpart–s[ought] to

determine liability and assess damages for the . . . fire." Id. at 307.  The state actions raised "only issues of state law," and in every action but one, Cisneros was a named defendant and "cross-claimed against Overall–if it had also been named a defendant–or ha[d] impleaded it." Id. The state actions were consolidated before a single New York State Supreme Court Justice.  Id.

The Second Circuit held that abstention was appropriate due to the risk of piecemeal litigation.  Id. at 308.  "The central problem with piecemeal adjudication in this case," the Circuit held, "is that a potential exists for 'inconsistent and mutually contradictory determinations.'"  Id.  The district judge rightfully

> feared a scenario under which Cisneros would prove Overall's liability in federal court–and then be able to use the judgment preclusively in state court–but that the inverse would not be true.  That is, if Overall were relieved of liability in the federal action, state plaintiffs–such as Cisneros' neighboring apartment dwellers–would not be bound by federal judgment because they would not have been parties to it.  Thus, Overall could face liability in two forums with the risk of inconsistent results, and the same state plaintiffs would be unable to be joined in the pending federal action because their presence would defeat diversity jurisdiction. The district court therefore concluded, and we agree, that these potentially contradictory findings of liability would "cause friction between state and federal courts."

Id.

Much the same is true here.  While Saltzman and Brogan could be joined in this action as residents of New Jersey and Michigan, respectively, Caminiti and Politan cannot because doing so would destroy diversity. (Dkt. No. 33: Nicolini Aff. Ex. A: 8/17/16 Caminiti Am. Compl. ¶ 1; Ex. B: 7/26/16 Saltzman Am. Compl. ¶ 1; Ex. F: 8/23/16 Brogan Compl. ¶ 1; Dkt. No. 43, Att. B: Politan Compl. ¶ 1); see, e.g., OneWest Bank, N.A. v. Melina, 827 F.3d 214, 217-18 (2d Cir. 2016). Jenkinson nevertheless argues that "allowing our case to proceed here may ultimately benefit the plaintiffs in the State actions since a finding of liability against the Brunos will collaterally bind

10

the Brunos in the State cases." (Dkt. No. 37: Jenkinson Br. at 15.)³/ Jenkinson, however, ignores that the inverse scenario could occur, i.e., if the Brunos were relieved of liability in the federal suit, the federal judgment in their favor would not bar the state plaintiffs' litigation of the same issues, leading to possible inconsistent results.⁴/ Moreover, the coordination of discovery between the state and federal courts will not result in identical trial dates. "In the opposite scenario, where the state court[] decide[s] the negligence issues first, there is no such conflict. The state proceedings are more comprehensive than the federal proceedings," and the rights of all parties would be decided simultaneously if this Court abstains. De Cisneros v. Younger, 871 F.2d at 308; see also, e.g., Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y., 762 F.2d 205, 211 (2d Cir. 1985) ("If the federal court refuses to abstain, it will force defendants to defend this complex litigation on two fronts. . . . As the suits all arise out of the single water main failure, they should be tried in one forum. Maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort. Plainly, avoidance of piecemeal litigation is best served by leaving these suits in the state court.").

---

³/     As one of the Kings County plaintiff's counsel stated, even if a liability finding in this case benefitted the state plaintiffs, that would not help if, because Jenkinson got the insurance proceeds first, all the state plaintiffs "will probably get [is] a judgment that is a piece of paper and worth nothing." (Dkt. No. 41: 11/30/16 Conf. Tr. at 26; see also id. at 31.)

⁴/     See, e.g., Josey v. Goord, 9 N.Y.3d 386, 389, 849 N.Y.S.2d 497, 500 (2007) ("The doctrine of res judicata precludes a party from litigating 'a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter.'"); Curley v. Bon Aire Props., Inc., 124 A.D.3d 820, 822, 2 N.Y.S.3d 571, 573 (2d Dep't 2015) ("'The two elements that must be satisfied to invoke the doctrine of collateral estoppel are that (1) the identical issue was decided in the prior action and is decisive in the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to contest the prior issue.'").

11

Furthermore, Jenkinson's counsel acknowledged that he was motivated to file in federal court because the Brunos hold a "limited [insurance] policy . . . of a million dollars," from which the state plaintiffs also will undoubtedly seek payment in the event they prevail. (Dkt. No. 33: Nicolini Aff. Ex. I: 9/23/16 Conf. Tr. at 6 ("This case is going to move much faster in federal court before your Honor than it will in state court.  And in terms of representing our client's interests, we believe that being in this forum is clearly in his best interest.").)  Jenkinson's and the state plaintiffs' respective rights "to the limited proceeds of the [insurance] policy and all other possibly applicable policies, would be most appropriately determined in a single forum." Am. All. Ins. Co. v. Eagle Ins. Co., 961 F. Supp. 652, 657 (S.D.N.Y. 1997).  Even if discovery in this case and the state cases were coordinated, the trial in this Court would occur a year (or more) before trial could occur in Kings County.  (See 11/30/16 Conf. Tr. at 11-13, 29.)  The consolidation of Jenkinson's case along with the already consolidated state cases, in state court before a single Justice, will facilitate the just determination of all parties' rights.[5]

Based on the foregoing, the avoidance of piecemeal litigation weighs heavily in favor of abstention.

---

[5] Jenkinson argues that "[t]he factor most heavily relied on by the Brunos is the extent to which piecemeal litigation will be involved with limited insurance available," citing Ryan v. Johnson, 115 F.3d 193, 199 (3d Cir. 1997), in support. (Jenkinson Br. at 13-14.)  The Court agrees with the Ryan court that "limited fund problems are, unfortunately, not uncommon in tort litigation," and thus could not, standing alone, support abstention.  Ryan v. Johnson, 115 F.3d at 199.  However, to the extent Jenkinson cites Ryan for the proposition that "it is evident that the 'avoidance of piecemeal litigation' factor is met . . . only when there is evidence of a strong federal policy that all claims should be tried in the state courts," id. at 197-98, the Third Circuit's narrow (and non-binding) approach does not reflect the law in this Circuit, as explained in De Cisneros v. Younger, above.

### 4.     The Order of the Actions

In terms of the order in which the actions were filed, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21, 103 S. Ct. 927, 940 (1983); see also, e.g., Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 820, 96 S. Ct. 1236, 1248 (1976) ("[W]e also find significant . . . the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss . . . ."); Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y., 762 F.2d 205, 211 (2d Cir. 1985) ("Decision does not rest on a race to the courthouse.").  "[W]here there has been limited progress in a state court suit, 'the fact that the state action was commenced before the federal suit carries little weight.'" Vill. of Westfield v. Welch's, 170 F.3d 116, 122 (2d Cir. 1999).

Jenkinson sued after the Caminiti and Saltzman actions, but before the Brogan and Politan actions, had commenced; all of the actions were filed close in time, between June and September 2016, and approximately six months have elapsed since the subject incident on June 4, 2016.  (See pages 1-2 above.)  The September 23, 2016 scheduling order in this case set a discovery cutoff of January 31, 2017 (Dkt. No. 25), but after discussion with Justice Rivera, the Court has vacated that order (Dkt. No. 36) in an effort to ensure that discovery is coordinated in the state and federal cases to the extent possible.  See NEW YORK STATE-FEDERAL JUDICIAL COUNCIL, REPORT ON THE COORDINATION OF DISCOVERY BETWEEN NEW YORK FEDERAL AND STATE COURTS 3 (May 2016), http://www.ca2.uscourts.gov/state_federal_judicial_councils.html (last visited Dec. 20, 2016) ("Scheduling and case management orders provide a basic vehicle for coordination.  By issuing such orders jointly or in parallel, federal and State court judges in related cases can ensure that they are on the same page as to the timing of discovery and procedures for written discovery and

13

depositions.").[6] The Brunos' counsel states that "discovery in all of the actions is in its early stages," "[d]epositions in all four actions have yet to be conducted," and concedes that "this factor provides little in determining whether abstention is warranted." (Dkt. No. 33: Nicolini Aff. ¶¶ 26-27.) Jenkinson, however, correctly notes that some written discovery has occurred in the federal action, which lends support to his argument that the state cases have made less progress. (Dkt. No. 37: Jenkinson Br. at 16-17; see also Nicolini Aff. Ex. E.) Yet any document or other written discovery likely is just as useful in the state actions as here, and Jenkinson's counsel does not provide any substantive argument to support his claim that this action is "substantially further along." (Jenkinson Br. at 17.)

The Court finds that this factor is neutral (and thus weighs against abstention) due to the close proximity and coordination among the state and federal actions, and the lack of relative progress of each. See, e.g., Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 102 (2d Cir. 2012) ("At best, we regard the filing of the state actions before the federal action as neutral–and, again, under Colorado River, a neutral factor counsels against abstention."); Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 524-25 (2d Cir. 2001) ("In the absence of any finding as to the progress of the state proceedings, the court's

---

[6] At the November 30, 2016 conference, the Court suggested to the plaintiffs' counsel in the state cases that if they wished to have discovery jointly supervised by this Court and the state court, they should stipulate accordingly. (Dkt. No. 41: 11/30/16 Conf. Tr. at 9.) The parties have not responded. The Court hoped that a definitive state schedule would have been set by December 16, 2016 (what was believed to be the date for the preliminary conference for the state actions) but was not. (Id. at 8; Dkt. No. 43: 12/19/16 Jenkinson Letter to Court at 1-2.) Discovery coordination between the state and federal actions has not been a seamless process–abstention will allow the state court and its own, distinct system, to coordinate discovery in the five cases more easily.

observation that the federal actions had not yet entered the discovery stage was not a basis for finding that this factor weighed in favor of abstention.").

### 5. Source of Applicable Law

"[A]lthough the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." Vill. of Westfield v. Welch's, 170 F.3d 116, 124 (2d Cir. 1999); see also, e.g., De Cisneros v. Younger, 871 F.2d 305, 308 (2d Cir. 1989) ("The substantive law to be applied, the fifth factor, in both the federal and the state actions is exclusively New York law. When the applicable substantive law is federal, abstention is disfavored, though the inverse proposition will not alone support a surrender of federal jurisdiction."); Gen. Reinsurance Corp. v. Ciba-Geigy Corp., 853 F.2d 78, 82 (2d Cir. 1988) ("The parties agree that the New York action involves purely state law issues. Although the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where 'the bulk of the litigation would necessarily revolve around the state-law . . . rights of [numerous] . . . parties.'" (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 n.29, 103 S. Ct. 927, 941 n.29 (1983)).

New York negligence law provides the rule of decision in this diversity case and the state cases, none of which includes any federal law claims. Negligence can hardly be termed a novel legal theory, and thus this factor weighs only slightly in favor of abstention. See, e.g., De Cisneros v. Younger, 871 F.2d at 309 ("[N]o such novel state law theory is present in this negligence case, and federal courts deciding diversity cases routinely apply state law."); Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y., 762 F.2d 205, 211 (2d Cir. 1985) ("As all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction."). To the extent resolution of the balcony collapse may involve "the construction of state and municipal

building [and] safety . . . codes[,] . . . this factor also tips the scale toward state resolution of the litigation." Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y., 762 F.2d 205, 211 (2d Cir. 1985); see Dkt. No. 1: Compl. ¶ 20 (asserting negligence "in violating applicable laws, rules and regulations"); Dkt. No. 33: Nicolini Aff. Ex. B: 7/26/16 Saltzman Am. Compl. ¶ 51 (alleging violation of New York City Administrative Code sections 27-2005 and 28-301.1 regarding a building owner's maintenance responsibilities, and New York's Multiple Dwelling Law sections 62 and 78 regarding open area maintenance and safety requirements).

### 6. Whether the State Forum Will Protect Plaintiff's Rights

The final factor concerns whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28, 103 S. Ct. 927, 943 (1983); see also, e.g., De Cisneros v. Younger, 871 F.2d 305, 309 (2d Cir. 1989) ("Were there a threat that [plaintiff's] rights would not be protected in state court, this factor would weigh heavily in favor of exercising federal jurisdiction, but such is not the case." (citation omitted)).

There is no reason to doubt that Jenkinson's rights will be adequately protected in the state forum where four other plaintiffs have initiated nearly identical negligence actions under New York law regarding the same incident. Jenkinson does not argue otherwise. (See Dkt. No. 37: Jenkinson Br. at 19.) This factor accordingly favors abstention. See, e.g., Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y., 762 F.2d 205, 211 (2d Cir. 1985) ("Finally, plaintiffs do not assert that the state-court proceeding would be in any way inadequate to protect their rights. Instead, consolidation in state court could lead to more efficient factfinding and more reasoned

decision-making. In fact, if either forum is in a better position to sort out the issues presented by this case, it is the state court, as the case involves exclusively questions of local law.").[7]

\* \* \*

The Court concludes that the Colorado River factors, taken together, favor abstention. The first, second, and fourth factors are largely neutral, and therefore counsel against abstention. However, the risk of piecemeal litigation, coupled with the absence of a federal question and existence of four parallel lawsuits in the state forum, present the exceptional circumstances required under Colorado River. See, e.g., De Cisneros v. Younger, 871 F.2d 305, 309 (2d Cir. 1989) ("Our analysis of the relevant factors and their underlying principles, particularly the risk of piecemeal litigation and the fact that only negligence issues governed entirely by state law are raised, strongly favors abstention.").

---

[7] The Court notes Jenkinson's argument in connection with the third Colorado River factor that "even in the simplest of cases the completion of discovery [in state court] can take twelve to 15 months, or longer, and much longer to get to an actual trial." (Jenkinson Br. at 15.) The parties do not dispute this general proposition. (See Dkt. No. 41: 11/30/16 Conf. Tr. at 5, 11-12, 20.) Jenkinson's concerns, however, appear more relevant to the sixth Colorado River factor, inasmuch as delay might contribute to the inadequacy of the state forum. Although it may be a longer road to trial in state court, Jenkinson asserts no cognizable prejudice that could arise as a result. And unlike, for example, a motion to transfer venue, potential delay in and of itself is not a specifically enumerated factor that courts must consider under Colorado River. Compare, e.g., 15 CHARLES A. WRIGHT & ARTHUR R. MILLER, Fed. Prac. & Proc. Civ. § 3854 (4th ed. 2016).

**CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss (Dkt. No. 31) is GRANTED and this case is DISMISSED without prejudice to refiling in Supreme Court, Kings County.[8/]

SO ORDERED.

Dated:	New York, New York
	December 20, 2016

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies ECF to:	All Counsel

---

[8/]	There is no substantive difference between a stay and dismissal under Colorado River. The Supreme Court has noted that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal. When a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28, 103 S. Ct. 927, 943 (1983); see also, e.g., Burnett v. Physician's Online, Inc., 99 F.3d 72, 77 (2d Cir. 1996) ("There is no difference between a stay and a dismissal for purposes of the Colorado River doctrine."); Abe v. N.Y. Univ., 14 Civ. 9323, 2016 WL 1275661 at *10 (S.D.N.Y. Mar. 30, 2016) ("'[T]he Colorado River exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate.'"); Shields v. Murdoch, 891 F. Supp. 2d 567, 576 n.7 (S.D.N.Y. 2012) ("Although Defendants have requested a stay, and not abstention, the Second Circuit has 'rejected any distinction between a stay of federal litigation and an outright dismissal for the purposes of the [Colorado River] exceptional circumstances test.'"). Dismissal is appropriate here because the state litigation will resolve all issues among the parties, such that this Court "will have nothing further to do in resolving any substantive part of the case." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 28, 103 S. Ct. at 943.